IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

TRAVIS J. LANG,

                       Plaintiff,                Civil Action No.
                                            9:18-CV-0506 (TJM/DEP)

     v.

CAPT. LISA ZUREK, *et al.*,

                       Defendants.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

TRAVIS LANG, *Pro se*
405 Quentin Road
Utica, NY 13502

FOR DEFENDANTS:

BARTH, SULLIVAN LAW FIRM      DAVID H. WALSH, IV, ESQ.
224 Harrison Street
Syracuse, NY 13202


DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

     This is a civil rights action brought by *pro se* plaintiff Travis J. Lang,

pursuant to 42 U.S.C. § 1983, alleging a deprivation of his constitutional

rights arising out of his confinement at the Oneida County Correctional Facility ("Oneida C.C.F."). In his complaint, as amended, plaintiff alleges that during an incident occurring on November 15, 2015, he was subjected to excessive force at the hands of defendants.

Currently pending before the court is a motion brought by defendants seeking dismissal of plaintiff's amended complaint in its entirety. In support of that motion, which plaintiff opposes, defendants argue that (1) the Fourth Amendment does not apply to claims of excessive force brought by prisoners; (2) plaintiff has failed to state a claim for excessive force under the Eighth Amendment because the allegations plausibly suggest that pepper spray was used against him to restore order, and thus in furtherance of a legitimate penological interest; and (3) plaintiff has failed to plead facts giving rise to a plausible *Monell*[1] claim against the County of Oneida. For the reasons set forth more fully below, I recommend that defendants' motion to dismiss be granted, in part, but otherwise denied.

---

[1]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

I.    BACKGROUND[2]

At approximately 3:45 p.m. on November 15, 2015, while serving a six-month sentence of imprisonment at the Oneida C.C.F., plaintiff presented to the facility's "meds cart" to receive his afternoon medications. Dkt. No. 11 at 3. After being informed by a nurse that he would not be receiving his medications, plaintiff advised Corrections Officer Seymour, who is not a party to this action, that he was not returning to his cell "because that was the second time that day [plaintiff] was denied [his] meds." *Id.* Plaintiff then retreated to a "back table and sat down[,]" at which point Officer Seymour sounded a "code 1". *Id.*

After the alert was sounded, defendant Lindsey Huckabone, another corrections officer, ran towards plaintiff and administered pepper spray. Dkt. No. 11 at 3. "[C]onfused and afraid[,]" plaintiff "jump[ed] up and ran away," at which point he was tackled by defendant Brandon Deavens,

---

[2]    In light of the procedural posture of this case, the following recitation is drawn principally from plaintiff's amended complaint, the contents of which have been accepted as true for purposes of the pending motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964). I have also considered plaintiff's opposition to the pending motion to the extent that it is consistent with, and elaborates upon, the factual allegations contained in the amended complaint. *See Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) ("[W]e deem [the plaintiff]'s complaint to include the facts contained in his memorandum of law filed in response to [the defendant]'s 1996 motion to dismiss.").

another corrections officer. *Id*. Plaintiff alleges that defendant Lisa Zurek, a captain and watch commander at the jail, observed the scene unfold, but failed to intervene in order to protect plaintiff. *Id.* at 4. As a result of the incident, plaintiff suffered "serious personal injuries." Dkt. No. 11 at 4; *see also* Dkt. No. 1 at 9.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on or about April 27, 2018, by the filing of a complaint accompanied by a motion for leave to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. By decision and order dated May 14, 2018, Senior District Judge Thomas J. McAvoy granted plaintiff's IFP application and conducted an initial review of his claims pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). Dkt. No. 7.

In that initial review, the court observed that it was not clear from the face of the complaint whether plaintiff was a prisoner or a pretrial detainee at the time of the incident and, accordingly, the court assumed solely for purposes of initial review that he was a pretrial detainee at the relevant times. Dkt. No. 7 at 6 n.4. As a result of that assumption, the court concluded that plaintiff's excessive force claims against defendants Huckabone and Deavens arose under the due process clause of the Fourteenth Amendment rather than under the cruel and unusual

punishments prohibition of the Eighth Amendment, and found that the claims should survive initial review and require a response. *Id.* at 5-6, 11-12. Plaintiff's remaining claims against all other defendants, including Oneida County Sheriff Robert Maciol and Captain Lisa Zurek, were dismissed without prejudice for the failure to the state a claim upon which relief may be granted. *Id.* at 11-12.

On May 24, 2018, before defendants acknowledged service and appeared in the action, plaintiff filed an amended complaint. Dkt. No. 11. In that amended pleading, plaintiff again names as defendants Captain Lisa Zurek, Corrections Officers Lindsey Huckabone and Brandon Deavens, and Oneida County Sheriff Robert Maciol, in addition to naming the County of Oneida, and asserts excessive force claims purportedly arising under the Fourth and Eighth Amendments to the United States Constitution. *Id.* As relief, plaintiff seeks awards of compensatory and punitive damages totaling $4 million. *Id.* at 7.

Upon review of plaintiff's new pleading pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), Senior District Judge McAvoy noted that based upon the allegations in the amended complaint, a response was also now required of defendant Zurek, as well as defendants Huckabone

and Deavens.[3] Dkt. No. 12.

In response to plaintiff's amended complaint, defendants have filed the present motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 18. Defendants' motion is opposed by plaintiff. Dkt. No. 22. That motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Legal Standard Governing Motions to Dismiss

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading using a standard that, though unexacting, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading

---

[3]    In his second decision, Judge McAvoy reaffirmed his dismissal of plaintiff's claims against Oneida County Sheriff Robert Maciol. Dkt. No. 12 at 4-5. However, Judge McAvoy's order did not address plaintiff's apparent attempt to assert a *Monell* claim against the County of Oneida. *See generally* Dkt. No. 12.

must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). While modest in its requirements, that rule commands that a complaint contain more than mere legal conclusions. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555-56); *see also Cooper v. Pate*, 378 U.S. 546, 546 (1964); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). As the Second Circuit has observed, "[w]hile *Twombly* does not require

heightened fact pleading of specifics, it does require enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570) (alterations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant, whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson*, 551 U.S. at 94 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citation omitted)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (quotation marks and alterations omitted)); *Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs.*, 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (Hurd, J.) ("A pro se complaint must be read liberally.").

B.    Excessive Force Under the Fourth Amendment

In his amended complaint, plaintiff specifically references the Fourth Amendment as a basis for his excessive force claim. Defendants argue that to the extent the complaint can be read as asserting an excessive

8

force claim arising under that amendment, the claim must be dismissed because as a sentenced prisoner at the time of the conduct of which he complains, plaintiff was subject to the Eighth Amendment's prohibition of cruel and unusual punishments. Dkt. No. 18-1 at 8-9.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. Amend. IV. As a result, the Fourth Amendment prohibits the use of excessive force by a police officer "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."); *Bonilla v. Jaronczyk*, 354 F. App'x. 579, 580 (2d Cir. 2009). *Allen v. City of New York*, 480 F. Supp. 2d 689 (S.D.N.Y. 2007).

As defendants observe, plaintiff's amended complaint makes at least passing reference to this action as having been brought pursuant to the Fourth Amendment. Dkt. No. 11 at 2, 5. However, unlike his original complaint, which resulted in Senior District Judge McAvoy assuming that plaintiff was a pretrial detainee for purposes of initial review, *see* Dkt. No.

9

7, plaintiff's amended complaint makes it clear at the time of the incident that occurred on November 15, 2015, he was serving a six-month sentence of imprisonment at the Oneida C.C.F. *Id.* at 3. Accordingly, the Fourth Amendment does not apply, and plaintiff's excessive force claim is appropriately analyzed under the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (per curiam). Accordingly, I recommend that the portion of defendants' motion requesting dismissal of plaintiff's Fourth Amendment cause of action be granted.

C.    Excessive Force Under the Eighth Amendment

Defendants next contend that plaintiff has failed to state a cognizable cause of action for excessive force under the Eighth Amendment, arguing it is clear from the allegations of plaintiff's amended complaint that the use of pepper spray served a legitimate penological purpose and was necessary to restore order at the facility.[4]  Dkt. No. at 18-1 at 9-12.

The Eighth Amendment, which prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the

---

[4]      Notably, although defendants seek dismissal of the amended complaint "in its entirety", their argument is limited solely to defendant Huckabone's use of pepper spray on November 15, 2015. Dkt. No. 18-1 at 9-12. Defendants do not address plaintiff's allegations against defendants Deavens and Zurek. *See generally* Dkt. No. 18-1.

progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]' " *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976); *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) (other citations omitted)). While the Eighth Amendment " 'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319 (quotation marks omitted); *Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson v. McMillian,* 503 U.S. at 1, 7-8 (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). To satisfy the subjective requirement in an excessive force case, the plaintiff must demonstrate that "the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quotation marks omitted).

This inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 1, 6 (quotation marks omitted); *accord*, *Blyden*, 186 F.3d at 262. The Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—not "whether a certain quantum of injury was sustained." *Wilkins*, 559 U.S. at 37. Accordingly, when considering the subjective element of the governing Eighth Amendment test, a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness. *Id.*; *Hudson*, 503 U.S. at 9.

Additionally, courts must bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (quotation marks omitted); *see also Griffin*, 193 F.3d at 91. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation marks omitted).

"The objective component [of the excessive force analysis] . . .

12

focuses on the harm done, in light of 'contemporary standards of decency.

' "*Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8); *see also*

*Blyden*, 186 F.3d at 263 (finding the objective component "context specific,

turning upon 'contemporary standards of decency' "). In assessing this

component, a court must ask whether the alleged wrongdoing is

objectively harmful enough to establish a constitutional violation. *Wilson v.*

*Seiter*, 501 U.S. 294, 303 (1991); *accord Hudson*, 503 U.S. at 8; *see also*

*Wright*, 554 F.3d at 268. "But when prison officials use force to cause

harm maliciously and sadistically, 'contemporary standards of decency

always are violated. This is true whether or not significant injury is

evident.' " *Wright*, 554 F.3d at 268-69 (quoting *Hudson*, 503 U.S. at 9)

(alterations omitted)). The extent of an inmate's injury is but one of the

factors to be considered in determining whether a prison official's use of

force was "unnecessary and wanton" because "injury and force . . . are

imperfectly correlated[.]" *Wilkins*, 559 U.S. at 38. In addition, courts

consider the need for force, whether the force was proportionate to the

need, the threat reasonably perceived by the officials, and what, if

anything, the officials did to limit their use of force. *Hudson*, 503 U.S. at 7;

*Whitley*, 475 U.S. at 321; *Romano*, 998 F.2d at 105.

      Here, plaintiff alleges that while he was seated at a table, after

refusing to return to his cell to be locked in, Corrections Officer Seymour

issued an alert that resulted in defendant Huckabone running towards

plaintiff and spraying him with pepper spray. Dkt. No. 11 at 3, 4. Although

plaintiff then attempted to flee from the situation, he was ultimately tackled

to the ground by defendant Deavens. *Id*. While this transpired, defendant

Zurek failed to intervene and prevent the alleged use of excessive force.

*Id.* at 4. Plaintiff's amended complaint alleges that as a result of the

incident, he "suffered [grievous] bodily harm[.]" *Id.* at 4.

Viewing the facts in the light most favorable to plaintiff, as the court

must at this stage, I find that plaintiff has plausibly stated an Eighth

Amendment claim against the named defendants. Although the four

corners of the amended complaint reveal that plaintiff may have

precipitated the use of force by his refusal to return to his cell and his

subsequent attempt to run from corrections officers responding to

Corrections Officer Seymour's alert, *see generally* Dkt. No. 11, there is no

indication as to the length, amount, or proximity of the pepper spray

deployment. Although discovery may reveal that defendant Huckabone's

use of pepper spray was accomplished in such a way as to ensure the

compliance of an uncooperative inmate, and was therefore in furtherance

of a legitimate penological purpose, at this early stage there are facts

14

pleaded to plausibly suggest that plaintiff may have been subjected to excessive force. *See Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (noting that the use of pepper spray "constitutes a significant degree of force").

Because the question of whether the use of pepper spray and the defendant officers' actions otherwise were in good faith as part of an effort to maintain or restore discipline at the Oneida C.C.F. is better suited for resolution on a motion for summary judgment, or at trial, based upon a fully developed record, I recommend that defendants' motion with respect to plaintiff's excessive force claim, arising under the Eighth Amendment, be denied.

D.     Municipal Liability

In the final portion of their motion, defendants contend that plaintiff has failed to plausibly allege a basis for fining municipal liability of the County of Oneida. Dkt. No. 18-1 at 12-13. Neither of the court's initial review decisions specifically referenced or analyzed plaintiff's *Monell* claims against the County of Oneida. Accordingly, for the sake of completeness, I will address this portion of defendants' motion.

A municipal entity may be held accountable for a constitutional violation that has occurred pursuant to "a policy statement, ordinance,

15

regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). Municipal liability can be established in various ways, including through "proof of an officially adopted rule or widespread, informal custom[] [demonstrating] 'a deliberate government policy or failing to train or supervise its officers.'" *Bruker v. City of N.Y.* 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of N.Y.*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000), or when municipal officers have acquiesced in or condoned a known policy, custom, or practice that violates federal law. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004); *see also Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) ("*Monell*'s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions."). A municipality's failure to act "satisfies the policy or

16

custom requirement only where the need to act is so obvious, and the inadequacy of current practices [is] so likely to result in a deprivation of federal rights[] that the municipality . . . can be found deliberately indifferent to the need." *Reynolds*, 506 F.3d at 192 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). Assuming a plaintiff can prove that a municipality has acquiesced to a pattern of conduct that may result in a violation of federal law, "for liability to attach . . .[,] the identified deficiency . . . must be closely related to the ultimate injury." *City of Canton*, 489 U.S. 391; *accord, Amnesty Am.*, 361 F.3d at 130 ("*City of Canton* requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific deficiency in the city's training program and establish that . . . it actually caused the constitutional deprivation." (quotation marks omitted)).

In his original complaint, plaintiff alleged that unknown officials at the Oneida C.C.F. "failed to properly train and supervise corrections staff at the facility, and that "defendants and county had prior notice of the vicious propensities of defendants." Dkt. No. 1 at 8-9. In its initial review, the court observed that plaintiff's failure to name Sheriff Maciol in the body of the complaint warranted dismissal against him on that basis alone, but went

on to note that even if the court could look past that deficiency, plaintiff's threadbare allegations failed to state a cognizable claim for relief. Dkt. No. 7 at 9-10 (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 55).

In the opening paragraph of his amended complaint, plaintiff asserts this this action is brought not only against Sheriff Maciol as the "supervisory officer responsible for the conduct" of corrections staff at Oneida C.C.F., but also the County of Oneida "as the employer" of corrections staff at Oneida C.C.F. Dkt. No. 11 at 1. In reviewing this amended pleading, the court noted that the allegations against Sheriff Maciol were "substantially the same as the allegations in the original complaint," and therefore failed to state a cognizable claim. Dkt. No. 12 at 3-4. Although the court did not explicitly address plaintiff's attempt to assert a municipal liability against the County of Oneida, I find that to the extent his amended complaint can be read as attempting to assert such a claim, it too fails for substantially the same reasons.

Since plaintiff's has failed to allege facts that would demonstrate a plausible basis to assign municipal liability to the County of Oneida for the alleged actions of the defendant officers, I recommend a finding that this claim be dismissed

IV.    SUMMARY AND RECOMMENDATION

Plaintiff, who is proceeding *pro se*, has plausibly alleged at this early stage of the proceedings that he was subjected to excessive force, in violation of his rights under the Eighth Amendment, while he was serving a six-month period of incarceration at the Oneida C.C.F. He has not, however, alleged facts supporting a plausible *Monell* claim against the County of Oneida, nor does he have any basis to contend that his rights under the Fourth Amendment were violated by the defendants.

Accordingly, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss (Dkt. No.18) be GRANTED in part, and that any claim of excessive force arising under the Fourth Amendment and all of plaintiff's claims against the County of Oneida be DISMISSED, but that defendants' motion otherwise be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report.[5]  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

---

[5]    If you are proceeding pro se and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Sunday, Saturday, or

APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:        October 17, 2018
              Syracuse, New York

_____
legal holiday. Fed. R. Civ. P. 6(a)(1)(C).